## AGREEMENT FOR SALE AND PURCHASE OF STOCK.

Circuit Court of Hamilton County.

JOHN W. HERRON, ADMINISTRATOR OF JACOB R. STEWART ET AL,
v. GEO. F. STEWART AND W. T. S. JOHNSON.*

Decided, January 8, 1907.

*Contracts—Option to Employes to Purchase Stock—Executory Character of Agreement—Mutuality—Consideration—Uncertainty as to Time for Payment—Reasonable Time will be Fixed.*

There was a manifest intention on the part of those entering into the contract here involved that it should be mutually obligatory and enforcible, and it is not lacking in either mutuality or in consideration; and the law will cure the uncertainty as to time by annexing a reasonable time.

This case was begun in the probate court, where Mr. Herron set up as administrator of the estate of Jacob R. Stewart, that the deceased died intestate, leaving as his sole heirs, next of kin and distributees, Carrie E. Stewart, his widow, George F. Stewart, Gertrude Stewart Titus and Mary L. Hazleton, his children; that intestate at the time of his death was in possession of 360 shares of capital stock in the Bradford Machine Tool Company, of the par value of $100 each, which stock stood in decedent's name on the company's books, and the certificate representing the same came into possession of the administrators; the estate had been practically settled except as to said stock; that George F. Stewart and W. T. S. Johnson (plaintiffs in error) claimed an interest in these shares under a contract entered into with them and Lewis N. Gatch by deceased, the alleged contract and certain endorsements thereon being set forth in the petition; that Gatch having assigned his interest in the shares to George F. Stewart and Johnson, was not made a party to the suit; that the widow and daughters had made demand on the administrator to disregard and disaffirm the contract and distribute the shares

---

* Affirmed; reported (*Stewart et al* v. *Herron, Admr., et al*, 77 Ohio State, ———).

in question to the distributees of the estate, stating also the reasons assigned by them for making such demand; and the administrator alleging ignorance of the true course he should adopt, prayed that the parties in interest be required to appear and answer, and for a decree determining their rights and the duties of the administrator in the premises.

Further provisions of the agreement were:

1.    The purchase price of said stock shall be its par value of one hundred dollars ($100) per share.

2.    Said stock shall remain in the name of said J. R. Stewart until it is fully paid for as herein provided, etc.

3.    All dividends declared on said stock shall be paid to said J. R. Stewart until it is paid in full.    Enough of said dividends shall be retained by him to make four per cent. on the balance of said purchase price unpaid at the time said dividends are respectively declared, and the balance thereof applied by him on said purchase price; and as soon as said stock is fully paid for, either through dividends or otherwise, it shall be delivered to said purchasers.    In case the dividend declared any year shall be less than four per cent. no interest shall run on said purchase price in excess of the dividend declared, and if none be declared there shall be no interest.

4.    Should said purchasers desire to make payments on said purchase price in addition to the dividends from time to time, declared on said stock, they shall have the option of doing so.

There was no express promise by the purchasers to pay for said stock, and no time named in the contract itself within which it was to be performed.

The younger Stewart and Johnson filed a joint answer, and Mrs. Stewart, the widow, and Mrs. Titus and Mrs. Hazleton, the daughters, filed separate answers, which all practically admitted the facts stated in the petition.

The probate court held that the contract was voidable for uncertainty and indefiniteness, but on appeal to the common pleas it was held to be valid.    The circuit court divided, but reversed the common pleas.    The minority opinion by Judge Jelke has recently been affirmed by the Supreme Court.    It is subjoined:

JELKE, J.

The parties evidently thought they were making a contract, a bi-lateral agreement, something of business significance, and intended that it would be mutually obligatory and enforceable. It does not read like a one-sided undertaking of benevolence. There is no "charity" about it.

Has that which they reduced to writing and acted upon, the essentials of a legal contract? Neither George Stewart nor Johnson are bound to stay or pay. When everything was executory there was no mutuality.

As a business proposition what was Stewart, Sr., driving at? He wanted these young men to continue in the company's employ. If they did so continue, he recognized that their services were worth to the company and to him, its largest shareholder, something over and above their respective salaries. When they had entered upon the employment and under this contract, at the end of the first day's work had they done something to and for Stewart, Sr., which he recognized as of value and which would be to him a price paid by these young men wherefore they could have the right to exercise these options? It seems to me they had.

With rare subtility this writing was framed to secure in an accumulating degree that which Stewart, Sr., wanted, i. e., the loyalty and zeal of these young men. The longer they stayed, the harder they worked, the more successful their efforts, the more strongly were they cemented to the company and to him, and if they must leave the more potent the inducement to buy,

These are the things which operated upon the mind of Stewart, Sr., and at the end of the first day's work he had received an installment on account of the consideration for the options.

It is not for us to weigh this consideration if we find from the writing it was to the mind of Stewart, Sr., the moving consideration.

I incline to the opinion that the executed consideration supporting the Johnson and Stewart shares will likewise serve as to the Gatch shares, but on this point I am willing to yield to my colleagues.

As to the uncertainty of time the law will "annex" a "reasonable time."

*Herron, Gatch, Herron & James* and *John W. Warrington*, for plaintiffs in error.

*Maxwell & Ramsey*, for defendants in error.